BENJAMIN L. SMITH v. LUCY A. MUNGER ET AL.

[47 South. 676.]

1. MORTGAGES. *Judgment liens. Priority. Estoppel.*

> Where, pending a suit to foreclose a mortgage, the judgment cred-
> itors of the mortgagor, defendants to the suit, advised the mort-
> gagee complainant that they had no defense and that he .could
> take his own course in the suit, and he, acting on the assurance,
> dismissed his suit and took a deed from the mortgagor to the
> lands involved, the judgment creditors were estopped from claim-
> ing that the lands were subject to their judgments.

2. SAME. *Lis pendens. Purchaser pending suit. Prior to Code* 1892.

> The assignee of a judgment against a mortgagor pending a suit to
> foreclose the mortgage, before the Code of 1892 became opera-
> tive was chargeable, without the formal *lis pendens* notice pro-
> vided for in that code, with notice of the pendency of the suit
> and of all the facts touching it which an inquiry would have
> disclosed.

3. JUDGMENTS. *Assignees. Disparity in price. Notice.*

> One who purchases a fourteen hundred dollar judgment for twenty-
> five dollars is not an innocent purchaser; the disparity between
> the sum paid and the amount of the judgment being sufficient
> to put him on inquiry and therefore to charge him with knowl-
> edge of existing defenses.

FROM the chancery court of Clay county.

HON. J. QUITMAN ROBINS, Chancellor.

Smith, appellant, was complainant in the court below; Mrs.
Munger and others, appellees, were defendants there. From a
decree in defendants' favor the complainant appealed to the su-
preme court.

This case was heretofore in the supreme court, and a previous
decision in it is reported, the style of the case, however, being
somewhat variant. *Street v. Smith,* 85 Miss. 359, 37 South.
837.

The opinion of the chancellor, ordered by the supreme court to be reported in full, and fully stating the facts, is as follows:

## CHANCELLOR ROBIN'S OPINION.

"In 1879 Stephen I. Munger, a resident of Clay county, Miss., died intestate, leaving a large and valuable estate of rich and choice lands in Clay, Lowndes, and Oktibbeha counties, together with a considerable personal estate. He had his life insured for $10,000. He left surviving him his widow, Mrs. Lucy A. Munger, one of the defendants in the two suits which are consolidated and tried together, and as his heirs and distributees he left, in addition to his wife, three children, Sallie, Senie, and Henry. His wife, Mrs. Lucy A. Munger, was appointed administratrix of his estate, and took charge of the estate, real and personal, as such administratrix. Her brother, Virgil H. Ryland, was her agent in the transaction of all her business connected with said estate. Through him she procured an order of court to farm the lands for the year 1880. He seems to have been careless and incompetent, and to have most recklessly mismanaged and wasted the estate. It is very apparent from this record that Mrs. Munger was not only not a strong and business woman, but was weak and incompetent to transact business. The whole business seems to have been turned over absolutely to her brother, Ryland. After 1880 no orders were taken to farm the lands, but under the same arrangement that was made in the beginning Ryland continued to control, rent out the land, collect the rents and manage the property. In 1881 Mrs. Munger's dower was set apart to her, and the lands set apart to her as dower in Clay county are those involved in these two suits. I am satisfied from the evidence in this case that Ryland was acting all the while, while in control of this property, as the agent of Mrs. Munger. At the time of the death of the decedent the three children were all quite young, the youngest being only four years old and the oldest about —— years old. No separate

account was kept of the rents and profits on that part of the lands set aside to Mrs. Munger as dower and the land which belonged to the children. They were very valuable and rich lands, consisting of three large tracts or plantations. The proof shows that this relation continued, and that the rents from these valuable places, aggregating $2,000 to $3,000 per year, continued thus to be collected and appropriated by Ryland as Mrs. Munger's agent until about the year 1891, when it was found that Ryland had given notes and contracted debts in the name of Mrs. Munger, without her authority, to a considerable amount. Suits were brought on these obligations against her, and the question was presented as to whether or not she should defend these suits and deny the liability and thus subject her brother to prosecution for forgery or some other crime, or allow them to go by default. In this situation an attorney, Judge Beckett, was consulted. He had been, it seems, the lawyer of Mr. Munger in his lifetime, and the lawyer of his wife after his death. He had attempted to keep the accounts straight by having annual settlements made, but had only been able, through the indifference, negligence, and procrastination, if nothing worse, of the agent, Ryland to make two or three accounts, and for some years before these suits were brought no accounts had been made.

"The children in the meantime had grown up, and seeing that their inheritance was about to be swept away, also consulted Judge Beckett, or at least the two older, the girls, did. In view of the then situation, with these suits against Mrs. Munger on which judgments would be rendered, for which she chose not to defend, Judge Beckett advised the preparation of a deed of trust, being satisfied, as he says in his testimony, from what he knew of the transaction, that Mrs. Munger, as administratrix of her husband's estate and as an individual, was largely indebted to these children. He prepared a deed of trust and had it executed by Mrs. Munger in December, 1891, to protect the estate of Stephen I. Munger, and the bondsmen on her admin-

istratrix's bond, for what she might be due the estate, and also to protect and to secure to her children, Sallie, Senie, and Henry, the heirs of Stephen I. Munger, what she might owe them in her individual capacity by reason of the dealings of her agent with their property. So, after this deed of trust was given and recorded, in January, 1892, judgments were rendered against her by default on the suits in favor of the creditors whose debts. had been incurred and obligations given by Ryland. In the meantime Ryland had made a failure in business on his own account, and had made an assignment. I am satisfied that the language of this deed of trust is broad enough and comprehensive enough to secure, not only what Mrs. Munger, as administratrix of the estate of her deceased husband, was due the estate, and her three children as distributees of said estate, but also to secure to them whatever amounts she might be liable to them for on an account by reason of her agent's improper dealing with their lands, especially in the collection and disbursement of the rents thereof for all these years. I am satisfied that at that time this was largely in excess of the value of her interest in said property.

"After the rendition of the judgments against Mrs. Munger, a bill was filed by Beckett for the three children against Mrs. Munger and the trustee in the deed of trust to foreclose the same; and to this bill the judgment creditors against Mrs. Munger were made parties defendant. Among these judgment creditors was J. R. L. Gerdine. At the appearance term of the court, after service of process on these judgment creditors to that bill of foreclosure, they appeared and asked for a time in which to answer the bill. On a consultation between these creditors and their counsel, after the filing of this bill and the procuring of leave to answer the same, they decided that there was no defense that they could make to the bill, that the deed of trust was a prior lien to the judgments, and that the amount due by Mrs. Munger to these children in this capacity would more than consume the value of the land; and one of the counsel who

participated in that consultation and conference notified Beckett, counsel for complainants in the suit which was No. 900, to foreclose, that they had no defense to the suit, and that he could take his own course, or words to that effect. It seems that the complainants in that suit rested upon that assurance, and proceeded no further with their suit, but in comparatively short time thereafter they made a division of the property among themselves; Mrs. Munger conveyed her dower in settlement of the amount supposed to be due to these children by her. In other words, they treated the foreclosure suit as having been won and the lands involved in it as having been subject to the deed of trust. I am of the opinion that in this transaction, and in taking this affirmative step to notify counsel for the complainants in the suit No. 900, they had abandoned the defense of the suit, and would not resist the foreclosure, that this was an abandonment of the liens under the judgments, and worked an equitable estoppel on the judgment creditors. The lands have since fallen into the hands of innocent purchasers, who parted with their money on the faith and in the belief that they were getting a good title. Benjamin L. Smith acquired the judgment of Gerdine, which at the time he acquired it was for about the amount of $1,400. I think it is very clear that Gerdine, who was fully advised as to what had transpired with reference to this dower land, and had abandoned all idea of enforcing his judgment against the same, had acknowledged the superiority of the deed of trust as a lien on the same over and against his judgment, because he sold the same for the insignificant sum of $25. At the time Smith bought this judgment this suit to foreclose this deed of trust, No. 900, was pending in the chancery court; and, as that was prior to the passage of what is known as the *lis pendens* statute, he had constructive notice of the pendency of that suit, which constructive notice, if it had been pursued by him by proper inquiry, would have led to an actual knowledge of the estoppel on his assignor, Gerdine. In fact, the very insignificant price that was paid for the judgment,

when there were over nine hundred acres of rich land in the name of Mrs. Munger, should have led him to suspect that there had been some dealings between this judgment creditor and the judgment debtor, or those who claimed through and under her, by which this land was not liable to that judgment. Smith, after procuring the transfer of the Gerdine judgment, had the same renewed in his own name by suit on the former judgment; and No. 1,418, *Benjamin L. Smith v. Lucy A. Munger et al.,* is a suit by him to clear up the title of this dower land by removing clouds, especially the deed of trust given by Mrs. Munger to secure her children before referred to, that the same might be sold under his judgment lien. At the time this suit was filed his counsel in the preparation of this bill No. 1,418, evidently did not know, as is conceded in the argument, about the bill No. 900, to foreclose the deed of trust. The pendency of this bill and the relations of the parties to the property is made a matter of cross-bill in No. 1,418, and by a former order of this court the two suits, No. 1,418 and No. 900, were consolidated and made one. I think that Smith has no higher rights than his assignor. I think his assignor, by his affirmative conduct in announcing to the complainants in suit No. 900 that he had abandoned the defense of the same, and that they could take their own course, thereby conceding the superiority of the lien of the deed of trust over his judgment, has lulled the complainants in the suit No. 900 into fancied security against his judgment, and that it would be inequitable and unjust, since the property has fallen into the hands of innocent purchasers in full faith that the title was good, to allow him to now enforce his judgment lien against this specific property. Years have passed, witnesses have died, memory has faded, records have become lost and mislaid, the great counsel who prepared their bill is no longer at the bar, innocent purchasers' rights have become involved, and this judgment creditor must lie on the bed that his assignor has made.

"In view of this equitable estoppel, I do not think it neces-

sary to refer this cause to a commissioner to make and state an account to show the amount due by Mrs. Munger as an individual to the complainants in No. 900, nor as administratrix of the estate of Stephen I. Munger. The complainant's bill therefore, No. 1,418, will be dismissed at complainant's cost."

*Gilleyler & Leflwich,* for appellant.

The court below, as shown in the opinion of the chancellor, found that Gerdine, one of the creditors of Mrs. Lucy A. Munger, and one of the defendants in the chancery foreclosure suit No. 900, after having sought leave to file answer, subsequently announced to the complainants in such foreclosure suit that he would abandon his defense and that they could take their own course. It will be observed that the complainants in this suit for foreclosure took no action, and were acordingly as guilty of laches as were any of the defendants. Now, Smith, the appellant, bought Gerdine's judgment claim on the faith of the record alone. The dealings between Gerdine and the aforesaid complainants were not communicated to the appellant when he bought the judgment.

Smith distinctly testified in the court below that he never heard of the alleged conversation between Gerdine or his lawyers and the Munger heirs, appellees.

Assuming that Gerdine or his counsel did tell appellees' solicitors, in regard to the foreclosure suit, that the creditors of Mrs. Lucy A. Munger had no defense to such suit, and further assuming that this fact was not communicated to appellant Smith, and that Smith was a *bona fide* purchaser of the judgment without notice, can Smith be bound by the undisclosed conversation between Gerdine's counsel and appellees' solicitors in reference to the non-existnce of a legal defense, and be precluded, as a result, from enforcing the lien of the judgment? Irrespective of what the status of Gerdine would be, it must he apparent that, under the circumstances, appellant as a *bona fide* purchaser of the judgment without notice cannot be affected

by former secret understandings and equities. 2 Black on Judgments (2d ed.), § 956; Freeman on Judgments (3d ed.), §§ 427, 428; *Duke v. Clarke,* 58 Miss. 465; *Clarke v. Duke,* 59 Miss. 575.

*Fox & McClellan,* for appellees.

Appellant seeks to avoid the equitable estoppel enforced against him by the lower court, by citing to this court the cases of *Clarke v. Duke,* 59 Miss. 575, and *Duke v. Clarke,* 58 Miss. 465, in regard to alleged secret equities affecting the rights of an assignee of a chose in action. But those cases however correctly they may have been decided, are not applicable here. This court will not allow Smith, the appellant, on a mere speculation for which he paid a trifle, to buy the rights of Gerdine who had estopped himself from enforcement of the judgment sold to Smith, and then after a long lapse of time assert that the judgment lien, so purchased by him from Gerdine, is superior to the lien of the deed of trust. *Wright v. Levy,* 12 Cal. 357.

Under the circumstances the appellant cannot claim to be an innocent purchaser without notice. It is improbable that he could fail to be put on notice of the pendency of the suit between Gerdine and the mortgage creditors, and all of the equities of which Gerdine had actual notice, and of which appellant could have been informed on inquiry, must be charged to appellant. *Wright v. Levy, supra.*

The finding of the court below was most equitable and should not be disturbed. When appellant bought the judgment, appellees' suit to enforce their deed of trust was pending in the chancery court, and appellant must, accordingly, be bound by constructive notice of the pendency of that suit. If appellant had followed up such constructive notice by due diligence he would have been led to an actual knowledge of the estoppel of his grantor, Gerdine. Under the circumstances set forth in the opinion of the chancellor appellant, as assignee of the judgment,

was estopped from asserting that the judgment was a prior lien to the deed of trust.

MAYES, J., delivered the opinion of the court.

We cannot make any improvement on the opinion of the chancellor in this case, either as to its statement of fact or conclusion of law. Therefore the opinion is ordered to be set out in the report of the case: and the decree is affirmed.