### BANK OF TUPELO *v.* MOTLEY.

[90 South. 435. No. 22277.]

LIS PENDENS. *Party taking deed of trust with notice of pending suit takes subject to suit and cannot attack decree therein in independent suit.*
    Where a bank took a deed of trust on property embraced in a suit to set aside the deed of its grantor on the ground that such a deed was procured by fraud, and where a *lis pendens* notice was filed of record in such suit at the time of its taking its deed of trust, it takes subject to the suit; and if it falls to intervene in said suit it cannot attack the decree thereafter in an independent suit on the ground that the allegations in such bill were not true in fact.

APPEAL from chancery court of Lee county.
HON. A. J. McINTYRE, Chancellor.
Bill by the Bank of Tupelo against E. B. Motley. From a decree therein, the plaintiff appeals. Affirmed.

*John R. Anderson,* for appellant.

What were the rights of Motley under his bill and *lis pendens* notice? We will assume first (and we believe the position is incontrovertible) that Motley got no greater rights by his bill and notice thereunder than he could have

gotten by a reconveyance by Harkey to him of the Motley residence at the identical hour he filed his bill and notice. In other words the court was powerless to do more for Motley than Harkey and himself could have done by convention. Let us consider the case from that viewpoint.

The purpose of a *lis pendens* notice is to give those dealing with the land involved notice of the rights of the parties to the suit. *Glattle* v. *Bradford,* 105 Miss. 573, 62 So. 643.

If the parties who filed the bill and the *lis pendens* notice had no rights, he preserves none by the notice. The Bank of Tupelo was not a party to the suit between Motley and Harkey. Its rights could not be effected by Motley's bill and *lis pendens* notice. Put the case this way, which is a true view of the case:

Harkey and Motley were both insolvent; they were both largely indebted to the Bank of Tupelo; Harkey had this Motley residence standing in his name subject to his debts —subject to the debt of the Bank of Tupelo—could Harkey and Motley either, by a reconveyance from the former to the latter of this homestead, or by a reconveyance as the result of a lawsuit between them, put this property out of reach of the Bank of Tupelo. Could this have been done even without a mortgage from Harkey to the Bank of Tupelo on this property? If it could, it appears to us it would be about as complete a miscarriage of justice as could be conceived of.

Appellee contends that by reason of the decree rendered in the cause No. 4460 that the rights of appellant, the Bank of Tupelo, were therein adjudicated. It is the contention of appellant that the decree rendered by the court in said cause No. 4460 had no binding force and effect upon appellant because the basis and foundation of said suit were wholly groundless and false and the grounds relied on in appellee's bill to divest the title to said property out of the appellant are wholly false and without foundation.

The chancellor based his opinion entirely upon the fact that appellee had filed his bill and *lis pendens* notice and

that it was the duty of the Bank of Tupelo to come into court and intervene in Motley's suit. The chancellor, in his opinion, said: "I do not think that it is necessary for me to pass upon the conflict in the evidence as to whether or not Motley knew of the outstanding of these notes against this land at the time of the purchase of the land."

It is our contention that this very question, that is, whether Motley knew of these outstanding notes at the time he purchased this land, is the very milk in the cocanut of this case; and if Motley knew that these notes to Gregory and Livingston were outstanding and he purchased the land in the face of these facts then his decree in cause No. 4460 was founded and procured through fraud and therefore has no binding force and effect upon the appellant.

We respectfully submit that this case ought to be reversed.

*George T. Mitchel* and *C. R. Bolton,* for appellee.

Part II of appellant's brief begins with the assumption of a fallacious premise which corrupts the whole course of his subsequent argument. The statement that Motley got no greater rights by his bill and *lis pendens* notice than he could have gotten by a reconveyance from Harkey is not strictly accurate. In so far as title (whether fee, term, etc.,) is concerned, it is true that the court gave Motley no better title than Harkey himself could. But both parties are claiming through Harkey and there is no question of his title.

On the other hand, it is equally true that the solemn decree of the court was more conclusive than a deed could have been between the parties. Many things are settled as to the parties and subsequent takers which may not be concluded by deed. All questions of the sufficiency of the consideration and the validity and genuineness of complainant's claim are foreclosed by the decree and cannot be again raised. The truth of the allegations of fact is

settled and cannot be re-opened. There is a finality attached to judgments of courts which cannot be given to deeds between the parties. Without the support of the fallacious premise that a judgment of a court can be of more binding force than a deed, appellant's whole argument in part second falls to the ground. His suppositional case of the effect of a deed from Harkey reconveying the property is irrelevant, for there is no such case before the court. Without admitting his conclusions of such a state of facts, they are immaterial, for there are no such facts in this case. The question is not what Harkey might or might not have done, but what was the effect of what the court did do by its decree.

It is our contention that, laying aside all other grounds, the decree of the lower court is clearly sustained by the proceedings in cause No. 4460. Appellant does not question the regularity of the proceedings in cause No. 4460. His only attack on this decree is that the allegations of the bill were not true. We say that that question is settled and cannot be raised by collateral attack in a separate suit.

Testimony was adduced on the trial of the case below on the question of whether or not the allegations of fraud contained in Motley's bill were true. Appellant offered testimony tending to show that they were untrue, while appellee introduced evidence supporting the truth of the allegations. The conflict of testimony is discussed by appellant in its brief, but we deem it unnecessary to do so here. We contended in the court below that all this testimony was immaterial in this case, as that question was adjudicated by the solemn recital of the decree in cause No. 4460. The court below adopted this view and held that it was unnecessary to consider this testimony in rendering a decree. There are but few cases in which there are not controverted questions of fact. In rendering judgment, a court has to determine certain facts to be true. If there is to be any finality to the judgments of the courts, these facts must be ever thereafter accepted as true as deter-

mined by the court. If the losing party is to be permitted to come into court and re-open the whole matter by claiming that those facts were in reality untrue and have the issue tried again, there would never be an end to litigation. Perchance his version of the facts might prevail that time and a judgment be rendered in his favor. Then what would hinder the other party from bringing a new suit on the ground that those facts last determined were false and untrue, and perhaps bring enough evidence to tip the scales of justice on his side again, and so on *ad infinitum*. Instead of the judgments of courts being final and bringing an end to litigation, such doctrine would make law suits an unending game of see-saw. The proposition is too absurd for argument.

It is an inescapable conclusion that Harkey was bound by the decree in cause No. 4460. The only possible question in this suit is whether the Bank of Tupelo, which was a taker subsequent to the *lis pendens* notice, was bound by it. We say it was and for support of our position cite the following: "A decree in chancery binds a purchaser of the property *pendente lite,* without his being made a party by amended bill, and a deed made by a commissioner under the decree relates back to the commencement of the suit, so far as the rights of the defendant and those claiming under him are concerned." *Shotwell* v. *Lawson,* 30 Miss. 27.

"One purchasing land *pendente lite* is bound by the decree though not a party." *Osborne* v. *Crump,* 57 Miss. 622. "The filing of the notice of *lis pendens* in a proper case, binds a purchaser *pendente lite,* although he is not made a party to the action." 25 Cyc. page 1465B.

There can be no question but that the Bank of Tupelo was a purchaser *pendente lite.* Their title was derived through J. R. Anderson, trustee, who took title subsequent to the filing of cause No. 4460 and *lis pendens* notice. They must stand or fall on the title of the trustee.

We think appellant practically admits itself out of court when it says in its brief: "Of course, if the deeds to Har-

key and Motley were procured through Harkey's fraud, then the decree of court in cause No. 4460 would be binding upon appellant Bank of Tupelo." That was the very question that was at issue in cause No. 4460. It was determined in Motley's favor and constitutes a conclusive adjudication not only as to Harkey but as to all claiming under him after *lis pendens* notice.

Furthermore it had actual notice of the suit and all that was attempted to be done by it, for it at one time appeared in said cause and then voluntarily withdrew. It was its duty to have intervened in cause No. 4460 and protected its rights obtained through the defendant therein, if it had any, for under the law the defendant and all takers subsequent to *lis pendens* notice were bound thereby. When it failed to avail itself of this opportunity, it let slip its opportunity to controvert the truth of the allegations of Motley's bill.

There are no errors involved in this appeal, the decree of the learned chancellor below was eminently proper and we respectfully submit that this cause should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant filed a bill in the chancery court against the defendants Motley, Ruff, Harkey, Livingston, Clark, Hambrick, and Gregory, and also against Anderson & Long as trustees, setting forth that Harkey borrowed from the appellant ten thousand dollars for the payment of which he executed his promissory not bearing eight per cent. interest from October 6, 1919, which was secured by collateral notes aggregating fifteen thousand and three dollars; that Harkey failed and refused to pay said note for ten thousand dollars, whereby the right accrued to the complainant to recover from Harkey the said ten thousand dollars with interest and also attorneys' fees; that the collateral placed by Harkey with complainant as security for the said ten thousand dollars was five promissory notes of the same date executed by Motley to Harkey, one for

one thousand and five hundred dollars and two for two thousand dollars each, all of said notes bearing 6 per cent. interest; that said notes represented the balance due by Motley to Harkey as the purchase money of certain land described in the bill; said land was bought by the defendant Motley from Harkey and a deed with vendor's lien reserved for the purchase money of said land; that Harkey also put up notes executed by Ruff to the amount of four thousand dollars, said notes representing a balance due on certain lands described in the bill; that when said notes were placed with the complainant they were indorsed in blank by Harkey; that the defendant Hambrick by a duly recorded deed conveyed to Harkey the interest of Hambrick in the said lands; that the defendants Livingston and Gregory prior to December, 1917, had all of the said lands, and on the 12th day of December, 1917, they sold and conveyed to Hambrick and Harkey in consideration of a cash payment and the balance of the purchase money represented by the notes for nine thousand dollars to said Livingston and Gregory; that Livingston and Gregory made the usual warranty deed and took from Hambrick and Harkey a deed of trust on said land for the balance of the purchase money, nine thousand dollars; that the defendant Clark had acquired certain of these notes to Livingston and Gregory; that, the defendants Hambrick and Harkey being in default, the right accrued to the defendants Gregory and Clark and to the complainant to have the foreclosure of the deed of trust executed to Livingston and Gregory for the payment of said notes.

It is further alleged that when the defendant Motley bought said lands from the defendant Harkey, he conveyed to Harkey a certain house and lot in the city of Tupelo described in the bill which was taken at a value of two thousand dollars and treated as a cash payment. It is further alleged that for the purpose of further securing the said note for ten thousand dollars executed by Harkey to the complainant, after the original transaction, Harkey executed a deed of trust on said house and lot in

Tupelo; that Harkey wholly failed to pay the said ten thousand dollars, and the trustee Anderson foreclosed the deed of trust on said house and lot, at which sale it was bought in by the complainant bank; that the defendant Motley had been in the possession all the time of the house and lot conveyed by him to Harkey and upon which Harkey gave complainant a deed of trust which was foreclosed as stated, and Motley is claiming that the complainant bank got no title to said property; that both Motley and the complainant bank claim title to said house through the defendant Harkey and it is not necessary to deraign title thereto; that Motley has no right, title, or interest in the said house and lot and that his claim thereto is a cloud on complainant's title which it has a right to have set aside by this court; that Motley is insolvent and cannot be made to respond to a personal judgment, and that the other securities held by the complainant bank than said house and lot are insufficient to pay complainant's debt; and prayed the court to settle the title between Motley and complainant to said house and lot; that the amount of the indebtedness due complainant bank by Harkey be ascertained and fixed and a personal decree rendered against Harkey, and that there be a foreclosure of said collateral secured by vendor's lien, and a decree be made for the sale of the land above described except the house and lot in Tupelo, and out of said proceeds the purchase-money notes due the defendants Clark and Gregory be first paid and the balance applied to the payment of the debt due complainant bank by Harkey, including interest, costs, and attorneys' fees, and for a personal decree against the defendants Ruff and Motley for any balance due and unpaid on their notes above described.

The defendant Motley filed an answer and cross-bill in which he set forth that the conveyance of said house and lot to Harkey was procured by fraud and that prior to the complainant bank's acquiring the deed of trust a bill had been filed in the chancery court to have said deed canceled and said transaction set aside for fraud, and that

a decree had been rendered in said suit against said Harkey canceling said deed for fraud, and that a *lis pendens* notice was filed with the bill, and that the complainant bank being a purchaser *pendente lite* was bound by said judgment. The complainant bank answered the crossbill and alleged that the allegations in the suit by Motley against Harkey were untrue in fact, and that as the complainant bank was not a defendant in said suit it was not bound thereby. On the hearing there was a conflict in the proof offered by the complainant bank and by the defendant Motley as to the facts concerning the trade between Harkey and Motley in which Motley conveyed to Harkey the house and lot in the city of Tupelo; the proof for the complainant bank tended to show that Motley knew of the prior incumbrance to Gregory and Livingston at and before the execution of the deeds in that transaction, while the proof for Motley tended to show that he did not know at said time of said facts, but only learned of them several days thereafter, and that when he learned of them that Harkey promised to take up said notes with the notes that Motley executed to Harkey on the same lands. The chancellor held that it was not necessary for him to decide this conflict of evidence; that, inasmuch as the bank acquired its deed of trust subsequent to the filing of the suit by Motley against Harkey to cancel his deed to Harkey to said house and lot, the complainant bank was bound by said decree, although not a party to said suit, and that the decree of cancellation related back to the filing of the bill and *lis pendens* notice, and that it was immaterial whether the allegations of that bill were true or untrue; that if the complainant desired to contest the truth of the allegations of that bill, it should have intervened in that suit, and that if it did not do so it was concluded by the decree in that suit.

The position of the chancellor as to this contention seems to be the law of this state. *Shotwell* v. *Lawson,* 30 Miss. 27, 64 Am. Dec. 145; *Osborne* v. *Crump,* 57 Miss. 622. The

chancellor decreed for the complainant bank as to the other features of the bill and there is no cross-appeal, so the only contention before us is as to the correctness of the decree canceling the trustee's deed to the house and lot in Tupelo made to the bank under the deed of trust secured by the bank subsequent to the filing of the suit. If the decree relates back to the date of the filing of the bill as it clearly does under the above authorities, then at the time of the giving of said deed of trust on said house and lot by Harkey to the bank Harkey had no title thereto.

There is a further contention by the appellee that the bank was not a *bona-fide* purchaser for value without notice and that the deed of trust was given to secure a pre-existing debt, but we deem it unnecessary to discuss this feature of the cause because the other feature disposes of the appeal.

The decree of the lower court will therefore be affirmed.

*Affirmed.*