JAMES and MARY McALLISTER vs. W. H. CLOPTON, Ex'r, et al.

1. CHANCERY PRACTICE: *Answer — Denial — Admission.*

The general rule is, that if the facts are stated to be in the defendant's personal knowledge, he must answer positively. As to facts which have not happened within his own knowledge, he must answer as to his information and belief, and not as to his information only. To disclaim personal knowledge of the facts, and demand strict proof, does not amount to a denial of the facts, and put the complainant on the proof of them.

2. SAME: *Mechanic's lien.*

The lien of the mechanic is subordinate to a prior incumbrance, so far as respects the land, but is nevertheless valid against the building.

APPEAL from the Chancery Court of *Monroe* County.

Hon. O. H. WHITFIELD, Chancellor.

The facts in the case are very fully stated in the opinion of the court.

The following is assigned for error: That the court erred in sustaining the motion to dissolve the injunction.

*Houston & Reynolds,* for appellants.

*Davis & McFarland,* for appellees.

SIMRALL, J., delivered the opinion of the court.

This appeal is brought to review the decree of the chancery court, made at the final hearing dismissing the bill. The case was once before in this court, on appeal from a decree dissolving the injunction.

Mary McAllister claims to be the owner of the property which the appellee, the administrator of Thomas Brandon, deceased, is attempting to sell, under a special judgment, founded on a me-

chanic's lien, for certain erections and buildings put upon the property, under a contract with her husband and one Ferris. The bill seeks a perpetual injunction against the sale.

The complainant alleges that on the 26th of April, 1858, Geo. C. Summay, Martin Luther Strong, and King, with Joseph T. Cason, became purchasers from Lark E. Huston, as trustee, of certain lots in the old town of Aberdeen, Cason acquiring a half interest. Afterwards, in 1858, Summary, Strong and King and Cason sold the lots to Cason, James D. McAllister and L. D. Farris, the two last of whom executed their promissory notes to their vendors in the firm name of J. T. Cason & Co., the name under which they had been conducting a livery stable business. The vendors executed a title bond to make conveyance in fee simple when the purchase money should be paid. This bond has been lost or mislaid. Afterwards Cason sold his interest to James D. McAllister and L. D. Farris. This deed has also been lost.

On the 14th April, 1859, McAllister and Farris made a written contract with Thomas Brandon, the testator, a brick mason and builder, for the erection of a brick livery stable on lot number 110, for which they were to pay him in certain installments, set forth in four promissory notes, to become due in one, two and three years thereafter, to wit: 25th of July, 1860, 1861, 1862, 1863, for $775.42 each. Farris died intestate, and on the 28th of October, 1859, James McAllister bought from his sole heir, Mrs. Wood, and her husband, the interest of their ancestor in the property. On the 8th of January, 1861, McAllister and wife sold to John W. Timberlake a half interest in the property. In 1865, Mrs. Mary C. McAllister bought Timberlake's interest. In 1866, Summay, Strong, King and Cason, instituted a suit in chancery to foreclose the lien retained on the property, against J. F. Cason, James D. McAllister, and L. D. Farris, and at the May term, 1867, obtained a decree for $1,369.76, under which decree, at the commissioner's sale, Mrs. Mary McAllister became the purchaser. In 1858, Brown & Gilson, for the use of Thomas Gilson, recovered a judgment against Joseph T. Cason for $1,305.20,

under which a sale was made on the 13th of May, 1859, by the sheriff, of Cason's interest in the property, when Huston and Reynolds became the purchasers and conveyed to Mrs. Mc-Allister.

Complainants rely upon the statute of limitations of six months against the two first notes of McAllister and Farris to Brandon, which suit was brought against McAllister alone, and judgment by default recovered for the sum due upon the four notes, which the complainant avers was a fraud upon the several parties under whom she claims, as well as upon herself.

The answer of the defendant, Clopton, administrator, etc., responds to the material allegations of complainant, in reference to the deraignment of her title to the property, that he has no personal information, and that he requires strict proof.

The general rule is, if the facts are stated to be on the defendant's personal knowledge he must answer positively, and not to his remembrance and belief, unless they occurred several years before. As to facts which have not happened within his own knowledge, he must answer as to his information and belief, and not as to his information only. Story's Eq. Plead., § 854. Among the admissible statutory rules regulating pleading and practice, are the following: "The answer shall be responsive to all material allegations of the bill." Code 1871, § 1016.

"Facts averred in the bill and not denied by the answer," otherwise than by the general traverse, may be taken at the hearing "as admitted." Sec. 1024. The effect of these two rules is, that an answer must respond to all the allegations of facts made in the bill, so that it may appear what is admitted; for, unless there is a denial of a material allegation, it is taken at the hearing as admitted. These specific denials put the parties at issue as to which alone proof is required. If the defendant is not so connected with the matters alleged as to have personal knowledge, hen he must answer according to his information and belief, either admitting or denying the allegations. Proof is only required to establish something put in issue by a denial. Such was mani-

festly the meaning given to the original of sec. 1024, in Reynolds *v.* Nelson, 41 Miss., 87–8. To disclaim knowledge of the facts and demand strict proof, does not amount to a denial of the facts, and put the complainant on the proof of them. There is much force in the position taken by counsel for appellant, that all these allegations of the bill, setting forth how she became owner of the property, and the muniments of her title, have not been contro-verted by the appellee, in such manner as to require testimony in their support. A disclaimer of personal knowledge, and a demand for strict proof, does not dispense with the necessity of responding according to information and belief, either by denial or admission. The silence of the defendant, manifestly, would under the rule, be tantamount to an admission. Silence as to a material allegation would be under the statute, and by its operation of equivalent import as to such allegation to a *pro confesso.*

The contract under which the appellee claims the mechanic's lien, was executed by Farris and McAllister, and expressly created the lien on the building and lot 110. It recites that they were jointly to carry on the livery stable business.

The writing, by implication, affirms that they had a right to give the lien on the lot, as well as upon the building.

The allegations of the bill, not sufficiently denied by the answer, and the deeds, documents and testimony, show what the right of McAllister and Farris was. They had an equitable title by pur-chase with Cason, from Summay, Strong, King and I. T. Cason, holding a bond for title when the entire purchase money should be paid. McAllister and Farris acquired Cason's interest by pur-chase.

Mrs. McAllister, the appellant, purchased under decree in the foreclosure suit of Summay, Strong, King and Cason, and thereby became invested with the legal title of these vendors, as well as the equity of the vendees. In addition to that she has acquired Cason's interest which was sold under judgments at law, and to that extent fortified her title. The conveyance of her husband

and herself to Timberlake, of a half interest, and his conveyance to her may be laid out of view.

At the time James McAllister and Farris made the contract with Brandon, the property was already incumbered with a lien for purchase money in favor of Summay, Strong, King and J. T. Cason. It has been settled by several decisions that the lien of the mechanic is subordinate to prior incumbrances, so far as respects the land. Otley *v.* Haviland, 36 Miss., 38; Buchanan *v.* Smith & Barksdale, 43 id., 99, 100–1–2; Cochran *v.* Wimberly, 44 id., 506–7; McLaughlin *v.* Green, 48 id., 202–3; Code 1857, p. 329. But Brandon's lien was nevertheless good as against the building. But was it good to the entire extent of the judgment which he recovered against James McAllister? Whilst it may have been competent for the debtor, so far as he was concerned, to confess a judgment or let it go by default for the entire debt, whilst half of it was barred by the statue of limitations as to the lien, yet that could not be done so as to affect other parties who had acquired rights in the property. Christian *v.* O'Neal et al., 46 Miss., 673.

As against the appellant and those to whose rights she has succeeded, James McAllister would not revive the lien if it had expired by the efflux of time. The statute had cut off the lien as to the two first notes to Brandon. The appellees ought to be limited and restricted to a lien upon the building alone, as to so much of the debt not thus barred, that is the two last notes.

But it is contended for the appellant that it ought to be restricted to so much of the building as was erected on lot 110. There is testimony tending to show that part of the brick walls extended onto adjacent lots, a few inches beyond the area of lot 110. But James McAllister and Farris were owners, subject to the incumbrance aforesaid, of all the lots called by the witnesses the livery stable property. We infer from the testimony that the entire area of lot 110 was covered by the building, whilst a portion of some of the walls projected a little beyond, and rested on parts of other lots. The edifice was put up on the old foundation

of the former house which had been burned down. McAllister and Farris indicated the line of the walls. We think in these circumstances it would be inequitable to confine the lien to so much only of the structure as is upon the area of lot 110. It should extend to the entire building, but not to the land.

Wherefore the decree of the chancery court dissolving the injunction and dismissing the bill is reversed, and cause remanded for further proceedings, in accordance with this opinion.