WEISS, DREYFOUS & SEIFERTH, INC., *et al. v.* NATCHEZ INV. Co., INC., *et al.*

(Division A. April 4, 1932. Suggestion of Error Overruled May 16, 1932.)

[140 So. 736. No. 29249.]

Brandon & Brandon, of Natchez, for appellant.

Currie & Currie, of Hattiesburg, Creekmore & Creekmore, of Jackson, Lazarus, Weil & Lazarus, of New Orleans, La., for appellees.

Briefs of counsel not found.

Argued orally by Gerard Brandon, for appellant, and Eldon Lazarus and Hiram Creekmore, for appellee.

Smith, C. J., delivered the opinion of the court.

The Natchez Investment Company, Inc., was placed in the hands of a receiver, and this appeal is from a decree adjudicating the priority of liens on its property.

The essential facts of the case are as follows: The Natchez Investment Company owned a lot in the city of Natchez on which it desired to erect a building for use as a hotel. In order to obtain the money necessary therefor, it entered into an agreement with the Standard Bond & Mortgage Company, Inc., by which the Standard Bond & Mortgage Company agreed to purchase three hundred and five thousand dollars of the investment company's bonds to be secured by a deed of trust on the land and the building to be erected thereon, the proceeds of the bonds, after the deduction of certain expenses incident to negotiating the loan therefrom, to be paid out by the Standard Bond & Mortgage Company in settlement for labor and material for the building as and when the same should become due. Pursuant to this agreement the bonds were executed, purchased by the Standard Bond & Mortgage Company for itself and others, and a deed of trust securing them was executed to the Canal Bank & Trust Company, as trustee, setting forth at great length the agreement relative to the disbursement of the proceeds of the bonds as hereinbefore outlined. Contemporaneously with the execution of the deed of trust a construction agreement was entered into, which set forth, among other things, the following:

"8. In order further to secure the payment of the principal and interest of all of the bonds secured by said deed of trust and mortgage, at any time negotiated and outstanding, according to their tenor and effect, and to secure the full and faithful performance of each and every covenant in said deed of trust and mortgage and in this agreement contained, and particularly the company's covenant to build, complete and equip said hotel building in accordance with the aforesaid plans, speci-

fications and contracts, and in consideration of the premises and the purchase of the bonds secured by said deed of trust and mortgage by the purchaser, the company (Natchez Investment Company, Inc.), has this day deposited with the trustee, in trust for the use and benefit of all future holder or holders of said bonds and coupons, the sum of two hundred seventy-three thousand ($273-000.00) dollars (hereinafter termed the 'Trust Fund'), receipt of which is hereby acknowledged by the trustee, and the said company does hereby pledge, pawn, assign and transfer said monies or trust fund to said trustee, its successors and assigns, as additional security for the equal and proportionate use and benefit of all future holders of said bonds and coupons, subject to the following terms and conditions:

"(a) Nothing shall be disbursed from said trust fund by said trustee unless and until the contractor, under the contract to be entered into by the company, hereinabove referred to, shall have properly and promptly performed and completed the said contract to the extent that the cost of work remaining to be done thereunder is less than the amount of the fund deposited or remaining in trust, and said company has made payment to said contractor on said contract in such amount that the balance, due or to become due, on said contract, is less than the amount of funds deposited or remaining in trust, and there has been no default by the company in the payment of the principal or interest, or in the due observance and performance of any covenant or condition in the said deed of trust and mortgage contained by reason of which the trustee could declare the bonds due and payable as provided in Article VI of said deed of trust and mortgage.

"(b) If the conditions set forth in paragraph (a) just above, have been fulfilled, and evidence of such fulfillment has been furnished to the trustee by written certificate of Weiss & Dreyfous, Inc., Architects, then, and in that event, and in that event only, said funds shall be

used by the trustee in making payments to the contractors for further work done under said contract. Such payment shall be made directly to the contractor by the trustee, upon the trustee's being furnished with a certificate of the architects, or their representative, which certificate shall have been approved in writing by the company, showing the work done, the amount due therefor, and the balance due and to become due to said contractor under said contract; provided, however, that the trustee shall have the right, but shall be under no duty to do so, to verify the correctness of any such certificate, and to determine whether the aggregate amount of the balance due for the work theretofore done thereunder exceeds the amount then remaining in said trust fund.''

The Natchez Investment Company entered into a contract with Burkes for the construction of the building, but became indebted also to others for extra labor and material for the building. The plans for the building were prepared, and the building was supervised, by architects to whose claim for compensation therefor Weiss, Dreyfous and Seiferth, Inc., has succeeded.

After the building was constructed the Natchez Investment Company was placed in the hands of a receiver. Among the questions presented to the court below was the order of priority of the liens of the deed of trust of the Canal Bank & Trust Company, of the laborers and materialmen, and of the Interstate Electric Company for electric fans sold by it to the Natchez Investment Company and placed in the building. The decree adjudged the lien of the deed of trust to be prior to that of the laborers and materialmen, including that of Weiss, Dreyfous & Seiferth, Inc., and refused to allow the lien claimed by the Interstate Electric Company.

The claim of Weiss, Dreyfous & Seiferth, Inc., and of the laborers and materialmen, other than the Interstate Electric Company, is that they are entitled to a first lien on the building and its proceeds when sold, under section

2258, Code of 1930, commonly known as the Mechanics' Lien Statute.

Of the three hundred and five thousand dollars secured by the Canal Bank & Trust Company's deed of trust there was paid to the contractors, laborers, and materialmen under the construction agreement approximately two hundred forty-six thousand thirty-three dollars for services rendered and material furnished in and about the construction of the building, a large part of the remainder was absorbed by expenses incurred in connection with the selling of the bonds secured by the mortgage.

The Mechanics' Lien Statute, section 2258, Code of 1930, is as follows: "Every house, building or structure of any kind, and any fixed machinery, gearing or other fixture that may or may not be used or connected therewith, railroad embankment erected, constructed, altered, or repaired, shall be liable for the debt contracted and owing, for labor done or materials furnished, or architectural service rendered about the erection, construction, alteration, or repairs thereof; and such debt shall be a lien thereon from the time of making the contract. If such house, building, structure, or fixture be in a city, town or village, the lien shall extend to and cover the entire lot of land on which it stands and the entire curtilage thereto belonging; or, if not in a city, town or village, the lien shall extend to and cover one acre of land on which the same may stand, if there be so much, to be selected by the holder of the lien. If the structure be a railroad or railroad embankment, the lien shall extend to and cover the entire roadbed and right of way, depots and other buildings used or connected therewith. Such lien shall take effect as to purchasers or encumbrances for a valuable consideration without notice thereof, only from the time of commencing suit to enforce the lien, or from the time of filing the contract under which the lien arose, in the office of the clerk of the chan-

cery court; delivery of material to the job is prima-facie evidence of its use therein.''

The statute creates a lien on both the building constructed or repaired and the land on which it stands, and on its face seems to allow priority over the lien only to purchasers or incumbrancers for value without actual or constructive notice thereof. This court has long since held, however, that the lien created by the statute does not always have priority over liens on the property that were in existence at the time the building or other property subject thereto was constructed or repaired. In Buchanan v. Smith, 43 Miss. 90; Ivey v. White. 50 Miss. 142; McAllister v. Clopton, 51 Miss. 257, and Big Three Lumber Company v. Curtis, 130 Miss. 74, 93 So. 487, deeds of trust on vacant lots were held to have priority over the liens of laborers and materialmen for labor and material furnished in and about the after construction of buildings on the lots. In Hollis v. Isbell. 124 Miss. 799, 87 So. 273, 20 A. L. R. 244. a mechanic's lien for repairing property on which there was a prior lien, and of which the mechanic had notice. was subordinated to such prior lien. In the first four of the above cases the court also held that, although the liens of the deeds of trust attached to the after-constructed buildings, they were subordinate to mechanics' liens thereon. The ratio decidendi of these cases is that the statute does not contemplate that a lien on property in existence before a mechanic's lien arose thereon should be impaired by such subsequent mechanic's lien.

The case here under consideration is not within that principle, and therefore not controlled thereby. The question here for decision is the priority between a deed of trust to secure future advances made for the purpose, and actually used in, the construction of a building, and mechanics' liens on the building arising during the course of the construction thereof. This question has not heretofore been decided by this court, but has been many times dealt with in other jurisdictions. In the note to

Kentucky Lumber & Mill Work Co. v. Kentucky Title Savings Bank & Trust Co., a Kentucky case, at page 399 of 5 A. L. R. it is said that: "Where the mortgage money is to be advanced and used for the carrying on of the work, and the lien claimants have furnished labor or materials with actual or constructive notice thereof, the mortgagee is ordinarily deemed entitled to priority." This statement seems to be correct, as will appear from an examination of the authorities there cited, and in the later note to Landers-Morrison-Christenson Co. v. Ambassador Holding Co., a Minnesota case, at page 580 of 53 A. L. R.

To so hold is in accord with the equities here, for, when these laborers' and materialmen's liens arose, the laborers and materialmen had constructive notice that the owner of the building had executed a deed of trust thereon to secure the payment of money to be advanced for the purpose of paying for the labor and material therefor as the construction of the building progressed; that the parties to that deed of trust contemplated that its lien should be paramount, and that the mortgagee had no option as to making such advances, but was irrevocably bound so to do. The lien, however, should not be extended any further than its equities require, and therefore should not be given priority, except to the extent that the money secured thereby was actually used in paying for the construction of the building.

The priority vel non of such a deed of trust, where the mortgagee was under no obligation to make the future advances, is, of course, not here presented, and therefore no opinion is expressed thereon.

The plans for the construction of the building were drawn by the architects before this deed of trust was executed, but the trustee therein and the Standard Bond & Mortgage Company had knowledge thereof. One of the bases of the appellees' claim that the deed of trust has priority over this architects' lien is that Weiss, Dreyfous & Seiferth, Inc., are estopped from claiming other-

wise because of representations made the trustee and the Standard Bond & Mortgage Company by the architects, before any money was paid out under the deed of trust and construction agreement, that the architects' fee had been paid. This representation is contained in a letter from the architects to the Standard Bond & Mortgage Company, reading as follows: "Please be advised that the Natchez Investment Co. have paid in full to J. V. and R. T. Burkes and to ourselves the aggregate of eighty-six thousand six hundred sixty-seven dollars, which we understand to be their total portion of money to be paid out by them before you can begin to make payments on account of this operation. We have in our files duplicate copies of certificates issued aggregating the above amount, which are open for inspection, if you so desire; and Mr. Levy, of Natchez, Mississippi, has in his files the receipts and original certificates. Please advise us if we are correct in assuming that your company will be the source of future payments on this contract, and oblige."

Among the certificates referred to in this letter was one covering the architects' fee, to which a receipt therefor signed by the architects was attached. The architects had not in fact been paid, the certificate being made with the knowledge and consent of the Natchez Investment Company for the purpose of inducing the trustee to begin making payments for the construction of the hotel. Considerable evidence was introduced as to the knowledge vel non of the Standard Bond & Mortgage Company of the falsity of this certificate and receipt, and that the architects did not intend to be bound thereby. The evidence, however, will not justify a finding that the architects were not estopped thereby, and therefore that lien must be subordinated to the lien of the deed of trust.

It follows from the foregoing views, first, that the court below should have allowed the appellants, laborers and materialmen, other than Weiss, Dreyfous & Seiferth, Inc., priority over the lien of the deed of trust, except to the extent of the money secured by the deed of trust that

was actually applied toward the construction of the building, as to which the lien of the deed of trust has priority; and, second, that no error was committed in subordinating the lien of Weiss, Dreyfous & Seiferth, Inc., to that of the deed of trust.

This brings us to the claim of the Interstate Electric Company that its purchase-money lien on its fans sold by it to the Natchez Investment Company and placed in the building has priority over the deed of trust thereon. The deed of trust, hereinbefore referred to, executed before the building was constructed, covers, in addition to other property, "all . . . electric light fixtures . . . furniture, fixtures and fittings of every kind in, or that should be placed in, any building or buildings now or hereafter standing on said premises." That deed of trust also provides that the Natchez Investment Company should thereafter execute chattel mortgages on the furniture and fixtures thereafter purchased for the hotel, pursuant to which, and after these fans were placed in the hotel, two chattel mortgages securing the payment of the bonds covered by the original deed of trust were executed on the hotel furniture and fixtures. Section 2239, Code 1930, provides that: "The vendor of personal property shall have a lien thereon for the purchase-money while it remains in the hands of the first purchaser, or of one deriving title or possession through him, with notice that the purchase-money was unpaid."

The appellees' contentions are, first, that the purchase-money lien on the fans disappeared when they came into the hands of the receiver, and, if not, second, that the lien is subordinate to the lien of the deeds of trust.

Frank v. Robinson, 65 Miss. 162, 3 So. 253; and Goodbar v. Knight, 89 Miss. 124, 42 So. 539, are relied on in support of the first of these contentions. In those cases it was held that a purchase-money lien could not be asserted on property in the hands of an assignee in a general assignment by the purchaser of the property for the benefit of his creditors. The statute under which the

first of these cases was decided did not create a lien in favor of the seller from the date of the sale of the property, but conferred upon him only the right to acquire a lien thereon by seizing it under judicial process while in the hands of the purchaser. The statute under which the second case was decided, which simply followed the first case without comment thereon, may have granted to the seller only the same right. At all events that most probably was the construction there placed on the statute. But, be that as it may, the statute as it now appears undoubtedly creates, not the right to acquire a lien by the seizure of property under judicial process, but a lien on the property from the time of its sale to continue as long as it remains in the hands of the purchaser, or one deriving title or possession through him, with notice that the purchase money was unpaid. When the fans came into the hands of the receiver, they remained, in so far as the receivership alone affects them, subject to the lien for the purchase money thereof, for the reason that a receiver takes property subject to all valid existing liens thereon. 53 C. J. 249.

The statute expressly provides that the lien shall continue as long as the property remains in the hands of the purchaser or one claiming through him with notice. "In the hands of" is equivalent to, and here means, "in the possession of." When the lien of these deeds of trust attached, the property was and thereafter remained in the possession of the purchaser, from which it follows that the lien of the deed of trust is subordinate to that for the purchase money for the reason that the rule almost universally is "that a prior lien gives a prior legal right, which is entitled to prior satisfaction, out of the subject it binds, unless the lien is intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant." 17 R. C. L. 610. The seller here had done nothing to displace its lien; the only thing it could have done that it did not do was to have the contract,

264

under which the lien arose, reduced to writing, and, if the statute permitted, have it recorded. If the statute permits this to be done, as to which we express no opinion, it certainly does not require it, therefore the seller's failure to so do does not render its lien subordinate to that of the deeds of trust.

The case of Tabb v. People's Bank & Trust Company, 160 Miss. 22, 133 So. 137, is not in conflict herewith. In that case the deed of trust, the lien of which was given priority over a purchase-money lien, was executed under chapter 243, Laws 1920. The ground of that decision is, not that the lien of a deed of trust is superior to that of a purchase-money lien on the same property ordinarily, but that the statute under which the deed of trust was executed so intends, because of its provision that a deed of trust executed thereunder "shall be a valid lien against all creditors of the grantor." The deeds of trust here in question are admittedly not within the provisions of that statute.

The Interstate Electric Company's claim to a purchase-money lien on the fans should have been allowed, and given priority over the deeds of trust thereon.

The decree of the court below will be reversed in so far as it affects the appellants, other than Weiss, Dreyfous & Seiferth, Inc., but no further, and remanded.

Reversed in part and remanded.