FIRST NATIONAL BANK OF GREENVILLE *v.* VIRDEN, et al.

In Banc. March 27, 1950.

No. 37446 (45 So. (2d) 268)

Farish & Keady, for appellant.

B. B. **Wilkes**, and **R. T. Love**, for appellees.

**Lee, J.**

This was an action by appellees, J. L. Virden, M. L. Virden, Jr., and H. W. Virden, doing business as Virden Lumber & Steel Company, under Section 356, Code of 1942, to establish and enforce their lien for materials against the property described in their petition. James M. Hilliard and the First National Bank of Greenville were made defendants. From the judgment rendered by the Circuit Court, the Bank appeals.

In July 1947, one James H. Hilliard obtained a commitment from the Federal Housing Administration to build two houses on vacant lots in the City of Greenville. He represented to appellees that he was going to finance through FHA. Prior to this, business relations between him and the appellees had been satisfactory—they had confidence in him—and felt that he was entitled to credit. They made no examination of, or inquiry about, the title, but began delivering materials on July 16, shipping the same on his requests. It was an oral contract, and they were to be paid in a reasonable time. Appellees had delivered up to August 9, materials of the aggregate value of $2,753.98. Their entire advance amounted to $6,150.31. These materials all went into the construction of these houses, and were practically all of the materials used to construct the same. The balance due them at the commencement of the suit was $4,307.18.

Although Hilliard had told appellees' salesman at one time that he was getting a loan from the Bank, appellees did not know of such financing until the day before this suit was filed.

Actually, Hilliard did confer with the Bank for the purpose of obtaining money to pay for the lots and for building the houses. He told the Bank that he could buy the lots and build the houses for $11,200, the amount of the loan. Previous business relations between him and the Bank had been satisfactory, and they thought he was entitled to credit. The Bank took a deed of trust for the stated amount. It recited his indebtedness in the sum of $11,200, "loaned and to be loaned"; and that it was given "to secure the purchase money for the above described lot and also for the purchase of the materials and lumber for the construction of a residence thereon". It was dated July 25. The deed to Hilliard was dated August 5. Both the deed and deed of trust were filed for record August 9. The Bank made no inspection of the lots—did not know that appellees were delivering materials—made no request for paid invoices —and undertook no supervision of the expenditure of the money. It took Hilliard's word that the money was going into the construction work, and its first notice of unpaid claims was the lis pendens filed in this suit.

When the loan was consummated, the money was placed in a suspense account to be released to Hilliard at intervals. The disbursements therefrom were as follows: August 9, $3,000; September 22, $2,500; October 4, $2,500; and October 27, $3,200. Hilliard never told the Bank, either before or after making the loan, that he owed the appellees, until the houses were near completion, when he paid appellees $915 at the windup of the loan. Only $7,315.76 of the money advanced by the Bank actually went into the purchase of the lots and the construction of the houses.

A trial before the judge, without the intervention of a jury, resulted in the fixing of the respective interests

and priorities as follows: The houses had been sold for $12,740, as to which, there was no complaint, and the funds, by agreement, were in the hands of the Bank. The court declared a first lien on these funds in favor of the Bank for $7,315.76, and a lien thereon in favor of appellees for $4,307.18, second only to the above stated amount of the Bank's first lien.

 The able briefs cite a number of cases, but we think that Weiss, Dreyfous & Seiferth, Inc., et al. v. Natchez Inv. Co., Inc., et al., 166 Miss. 253, 140 So. 736 is decisive of the question involved here. In that case, the Natchez Investment Company owned a lot and desired to build a hotel thereon. It issued bonds, secured by a deed of trust on the lot and the building to be erected. At the same time, a construction agreement was signed with the purpose of insuring completion. A contract was awarded, but extra labor and materials were required. Following the completion of the building, the Investment Company was placed in receivership. A controversy arose between the bondholders under the lien of their deed of trust and the laborers and materialmen, inasmuch as all of the proceeds of the bond issue had not gone into the construction of the building. In its opinion, the Court, 166 Miss. at page 259, 140 So. at page 738, stated the query as follows: "The question here for decision is the priority between a deed of trust to secure future advances made for the purpose, and actually used in, the construction of a building, and mechanics' liens on the building arising during the course of the construction thereof."

The Court said that this question had not, theretofore, been decided and waived aside Buchanan v. Smith, 43 Miss. 90; Ivey v. White, 50 Miss. 142; McAllister v. Clopton, 51 Miss. 257; Big Three Lumber Co. v. Curtis, 130 Miss. 74, 93 So. 487; and Hollis & Ray v. Isbell, 124 Miss. 799, 87 So. 273, 20 A. L. R. 244, as being inapplicable.

The Court then, used the following language to decide this question: ". . . when these laborers' and

materialmen's liens arose, the laborers and materialmen had constructive notice that the owner of the building had executed a deed of trust thereon to secure the payment of money to be advanced for the purpose of paying for the labor and material therefor as the construction of the building progressed; that the parties to that deed of trust contemplated that its lien should be paramount, and that the mortgagee had no option as to making such advances, but was irrevocably bound so to do. *The lien, however, should not be extended any further than its equities require, and therefore should not be given priority, except to the extent that the money secured thereby was actually used in paying for the construction of the building.''* (Emphasis ours.)

In the case now before us, the deed of trust was given to obtain money to buy the lots, and to pay for the materials going into the houses. The Bank knew that the houses were being constructed, but it did nothing to see that such construction was being paid for. It merely turned the money over to Hilliard, when and as he asked for it, with the result that only $7,315.76 of its money actually went into the project, and those furnishing the materials were left to hold the bag to the tune of $4,307.18.

The mortgagee, in a case such as this, should advance the proceeds with reasonable diligence in order that the holders of statutory liens may not be unjustly defeated in their claims. It is simple justice that such mortgagee shall have preference only to the extent that its funds actually went into the construction.

Affirmed.