SOUTHERN LIFE INSURANCE COMPANY, et al. *v.* POLLARD APPLIANCE CO., et al.

No. 42610          March 4, 1963          150 So. 2d 416

*McIntyre & McIntyre*, Brandon, for appellants.

*Satterfield, Shell, Williams* & *Buford*, Jackson, for appellant, Southwest Savings and Loan Association.

*Willis T. Matthews,* Magee, for appellee, M. M. Magee.

*Pierce & Waller,* Jackson, for appellees, Pollard Appliance Company, et al.

ETHRIDGE, J.

This case involves consolidated suits by five material-men, against a contractor who constructed a home for the owners and the assignee of a bona fide mortgagee without notice, which assignee had or should have had notice of the liens, and was a prior construction mort-gagee. These actions sought judgments (a) against the contractor for the amount of their liens, and (b) for the imposition of materialmen's liens on the property superior to the deed of trust held by the assignee. The Circuit Court of Rankin County granted the relief re-quested.

Southern Life Insurance Company, the original mort-gagee (called Southern Life), and Southwest Savings and Loan Association, its assignee (called Southwest), appealed from that decree with supersedeas. The other defendants, Paul J. Embler, the contractor, and his wife, Helen R. Embler, against whom judgments were

rendered for the amounts of the five materialmen's liens, $6,261.55, did not appeal. The appellees (plaintiffs below) are Pollard Appliance Company and four other materialmen.

Generally, a purchaser of real property with notice (of prior equities) from a bona fide purchaser takes free of the claims existing against it in another person. The main question is whether Southwest, assignee of the bona fide encumbrancer, Southern Life, falls within an exception or limitation on this rule, by which a conveyance is not protected when made back to a former owner or mortgagee who had notice of the equities, and who did not originally derive title through a bona fide holder. We think it does.

J. P. Oliver owned a lot in Rankin County, upon which he desired to construct a home. He was an employee of Paul J. Embler, doing business as Embler Masonry Homes. He arranged with Embler for the latter to construct a house on the lot. On June 9, 1960, Oliver and wife executed a deed of trust to Embler, as beneficiary, in the amount of $21,500.00, ''payment in full upon closing of loan,'' to cover construction costs of the house to be erected by Embler. It was recorded on June 15, 1960, and on that day Embler assigned it to Southwest. This deed of trust was executed before any construction was had, and Southwest, through its president, R. O. Brasfield, knew it was assigned to Southwest for the purpose of securing construction funds.

This assignment was in violation of Miss. Code 1942, Rec., Section 373, which provides that no contractor shall have the right to assign or otherwise dispose in any way of the contract or the proceeds to the detriment or prejudice of laborers and materialmen, and all such assignments shall be subordinate to their rights, as well as those of the owner, unless the contractor enters into a solvent bond conditioned for payment of labor and

materials. Section 373 prohibits assignment of ''the contract or the proceeds thereof'', which includes assignment of a deed of trust to the contractor from the owner. Neither Embler nor Southwest made any effort to comply with this statute. Southwest paid no immediate consideration for the assignment of this deed of trust, but subsequently advanced $10,000 to Embler on construction of the house.

Embler made various purchases of materials from Pollard Appliance Company and the other four materialmen, who are appellees. However, he was in financial difficulties with reference to this and other homes, which he was constructing in the vicinity, and manifestly did not use the funds, advanced to him by Southwest under the construction deed of trust, to pay materialmen. The record supports the finding of the trial court, before whom these matters were tried without a jury, that the materials furnished by appellees went into the Oliver house.

No precautions whatever were taken by Southwest, the construction mortgagee, to protect appellees. Brasfield said he ''supposed'' the money was to be used in the construction. He visited the premises on unidentified occasions to see ''how it was getting along.'' He did not know who was supplying the materials, and was under the impression Embler was using the money to pay materialmen and laborers. He obtained no affidavits or other evidence of payments, and took Embler's word instead of an accounting. He undertook at no time to find out what payments Embler was making to materialmen and laborers.

Oliver and wife obtained a commitment from Southern Life for a loan of $14,000 on the lot and residence. It was represented by W. E. McIntyre, Jr., an attorney. After McIntyre obtained the certificate of an appraiser, showing the dwelling had been completed in accordance with plans and specifications, he proceeded with closing

the loan. This was done on November 7, 1960. That afternoon the Olivers and Embler came to his office. The Olivers executed the deed of trust, and McIntyre went to the courthouse, checked all records from the time of an earlier examination, and learned there were no intervening claims of any type on the property, except the construction deed of trust owned by Southwest. The Olivers gave an owners' affidavit, and Embler a contractor's affidavit, stating there were no claims for labor or materials remaining unpaid against the house. After the Olivers executed a promissory note and deed of trust to Southern Life, McIntyre filed the latter for record at 3:15 P. M. on that date.

McIntyre also obtained from Southwest and Embler a cancellation of the construction deed of trust, assigned by Embler to Southwest (dated June 9, 1960). After having taken in a diligent and proper manner these precautions and steps, McIntyre disbursed proceeds of the $14,000 Oliver loan as follows: $10,586 to Southwest Savings and Loan Association, to pay off its construction deed of trust; $3,148.01, the balance after deducting survey and other fees, to Embler. Mr. and Mrs. Oliver endorsed the Southern Life check payable to McIntyre as attorney and to them. The disbursements as stated were then made.

Process was had on Embler and wife, but they made no appearance. Oliver testified. At the time Embler made the contractor's affidavit in McIntyre's office, stating all materialmen and laborers had been paid, he knew that appellees had not been paid. Oliver also knew this. Hence both Embler and Oliver gave McIntyre, attorney for Southern Life, false and fraudulent affidavits as to payment of materialmen and laborers on the construction job.

On the morning before the Southern Life loan was closed that afternoon, the Olivers executed a deed to Helen R. Embler, wife of Paul J. Embler, conveying to

her this property. Oliver said that he did this on the advice of Embler, to whom he owed money. Embler took possession of the deed. Hence at the time the Southern Life loan was closed by the Olivers in McIntyre's law office, they knew they did not own the property. Oliver received no monetary consideration for this deed, but only Embler's agreement that he would allow him several weeks to sell the house, and receive as profit anything over the cost. The deed from the Olivers to Mrs. Embler was recorded on that afternoon at 4:00 P. M., forty-five minutes after McIntyre had filed the Southern Life deed of trust.

Subsequent to November 7, 1960, Embler's financial difficulties arising from construction of several homes continued to increase. During the summer and fall of 1960, Embler discounted all of his loans with Southwest, which assisted in the construction financing of houses being built by Embler. Brasfield, president of Southwest, admitted it had a number of transactions with Embler. The appellees, materialmen, filed lis pendens notices of their liens on November 22 and December 14, 1960, and January 11, 1961.

On December 21, 1960, Helen R. Embler, to whom the Olivers had conveyed the property in question, executed a deed of trust to Southwest to secure a debt of her husband to Southwest in the sum of $25,000. It covered the property in question and another lot, and she assumed jointly with her husband his debt to Southwest, which was also secured by another deed of trust on other property. As to the Oliver property, this was a second deed of trust, subsequent and subordinate to that of Southern Life. The present suits, consolidated for trial, were filed by the materialmen on February 3, 1961. On March 10, 1961, the second deed of trust, from Helen R. Embler to Southwest, was foreclosed by the trustee and sold to Southwest.

In the meantime, however, the first monthly installment on the Southern Life deed of trust, due December 1, 1961, was not paid, and Southern Life requested its attorney, McIntyre, to foreclose. The officers of Southwest were aware of the delinquent status of the Southern Life deed of trust, and late in January, 1961 contacted McIntyre about purchasing it and the note. On March 8, 1961, Southern Life endorsed the note secured by the first deed of trust to Southwest "without recourse," and assigned to Southwest "without recourse on the assignor" the Oliver deed of trust. Southwest paid Southern Life $14,320 for these instruments. On June 16, 1961, while these suits were pending, the Southern Life deed of trust, owned by Southwest, was foreclosed and sold to it. The record discloses no accurate value for the property, but evidence indicates a market value of between $21,000 to $30,000.

The circuit court found that, although Southwest did not have actual notice of these unpaid claims of materialmen when it bought the Southern Life deed of trust, it loaned the construction money, and, under all the circumstances, the facts were such as would reasonably put Southwest on notice or inquiry which would be calculated reasonably to disclose the true facts and existence of the liens. Hence, the trial court said Southwest was in the same status as a construction mortgagee, with a duty to use reasonable diligence in assuring payment of materialmen with construction loan funds. The Southern Life deed of trust assigned to it was subordinate to liens of the materialmen.

There are two questions: (1) Was Southern Life a bona fide purchaser of the deed of trust on the property without notice? (2) If Southern Life was, when it assigned this deed of trust to Southwest, did Southwest also take the status of a good faith holder? Or, in view of its prior dealings and the construction mortgage, is Southwest precluded from claiming as a good faith

holder and asserting a first lien superior to those of materialmen?

■■ *First*: Southern Life was a bona fide purchaser of the deed of trust for value without notice of the materialmen's liens. Its note and deed of trust, in its hands, were prior, superior liens to those of the materialmen.

Code Section 356 provides that real property shall be liable for debts contracted and owing for labor and material, and the debts shall be liens on it from the time of making the contract. However, it further states: "Such liens shall take effect as to purchasers or encumbrancers for a valuable consideration without notice thereof, only from the time of commencing suit to enforce the lien, or from the time of filing the contract under which the lien arose, in the office of the clerk of the chancery court; . . . . ."

■■ A lender advancing construction funds must use reasonable diligence to see that these funds are actually used in payment for materials or other cost of construction. Such a construction mortgagee has preference over materialmen and laborers only to the extent that its funds actually go into the construction. Weiss, Dreyfous & Seiferth, Inc. v. Natchez Investment Co., Inc., 166 Miss. 253, 140 So. 736 (1932); First Nat'l. Bank of Greenville v. Virden, 208 Miss. 679, 45 So. 2d 268 (1950); Deposit Guaranty Bank & Trust Co. v. Weaver Lbr. Co., 215 Miss. 183, 60 So. 2d 598 (1952); Anno., 80 A. L. R. 2d 179, 247 (1961).

However, Southern Life's loan was not a construction obligation. It was made after construction was finished, for a completed house, and after its attorney secured affidavits from the contractor and the owners that there were no outstanding materialmen's liens. Moreover, the attorney for Southern Life, acting in a professionally diligent manner and as Southern Life's agent, undisputedly acted in good faith and without notice of any

materialmen's liens on the property. Appellees could have protected their interests against Southern Life either by filing the contracts under which their liens arose or lis pendens notices in the office of the chancery clerk. Code Secs. 356, 380. They did not do this before the loan was made.

A bona fide purchaser for value without notice, including a mortgagee, obtains under Section 356 an encumbrance superior to claims of materialmen and laborers, unless it has actual notice of the existence of such claims, or knowledge of such facts as would put it on inquiry, or constructive notice by the lienors having filed their contracts or lis pendens notices of their liens. Big Three Lbr. Co. v. Curtis, 130 Miss. 74, 93 So. 487 (1923); Swift & Co. v. Everett, 171 Miss. 410, 157 So. 476 (1934). None of these latter factors existed here. McKenzie v. Fellows, 97 Miss. 31, 52 So. 628 (1910). So the Southern Life deed of trust was a superior lien to those of the materialmen. Southern Life was a bona fide encumbrancer for a valuable consideration without notice of them. Code Sec. 356. However, since it assigned the note and deed of trust without recourse, and received payment for them from Southwest, it is only a nominal party in this appeal. Southwest is the real appellant in interest.

*Second*: The rights of Southwest are in a different category from those of Southern Life, the bona fide encumbrancer for value without notice. The general rule is that a purchaser for value may not only enjoy the property free from any adverse claim of which he had no notice at the time of his purchase, but he may also transfer his rights to others, and the fact that his assignee had notice is immaterial. Hence it is usually said that a purchaser with notice from a purchaser without notice has all of the rights of the latter. 8 Thompson, Real Property (1940), Sec. 4479; Tiffany, Real Property (3rd ed. 1939), Sec. 1307; 92 C. J. S., Vendor and

Purchaser, Sec. 360; 55 Am. Jur.; Vendor and Purchaser, Sec. 759; Lay v. Nutt, 194 Miss. 83, 11 So. 2d 430 (1942); Barksdale v. Learnard, 112 Miss. 861, 73 So. 736 (1916); Equitable Securities Co. v. Sheppard, 78 Miss. 217, 28 So. 842 (1900); Lusk v. McNamer, 24 Miss. 58 (1852).

■■ ■ However, an exception or qualification to this rule exists when the second purchaser had previously held the property subject to such adverse claims. If a bona fide purchaser reconveys to one guilty of a violation of trust or duty with respect to the land, the latter is not entitled to protection. 5 Tiffany, Sec. 1307; 55 Am. Jur., Vendor and Purchaser, Secs. 761, 762; 4 Powell, Real Property (1954), Sec. 541, p. 256. Such a transfer, made to a person who previously had ownership tainted with knowledge of a breach of duty, revives the ability of the beneficiary or claimant to reclaim his own. 4 Powell, Sec. 541. Accordingly, a conveyance from a bona fide purchaser is not protected when made back to a former owner, who had notice of the prior claims, or who was guilty of a violation of duty toward previous claimants. 92 C. J. S., Vendor and Purchaser, Sec. 360; Anno., 63 A. L. R. 1362, 1372 (1929). Cf. 2 A. L. I., Rest. of Trusts, Secs. 318, 319.

8 Thompson, Real Property, Section 4480, pp. 345-346, analyzes this qualification upon the general rule:

"The title of a purchaser without notice can not be transferred free from equities back to a prior grantor who was charged with notice at the time he acquired his former title, for a purchaser can not be allowed to clear off the existing equities, of which he had notice, by transferring the title to an innocent purchaser, and then repurchasing the property. The existing equities of which he had knowledge revive and attach to the property to the same extent that they formerly attached to it in his hands. Thus, a second mortgage, which in the hands of the mortgagee is subject to a prior subsisting mortgage by reason of his notice thereof, it not

being a lien of record, becomes, in the hands of an assignee for value and without notice, free of such prior equitable lien. However, the priority of the second mortgage is lost if it is again assigned to the former owner, who had notice of the prior equity of the first mortgage; and it is also lost, and the equity of the first mortgage reattaches, in case there is a foreclosure sale under the second mortgage, and the second mortgagee who had notice of the prior equity of the first mortgage becomes the purchaser at such foreclosure sale.''

Clark v. McNeal, 114 N. Y. 287, 21 N. E. 405 (1889), to which Thompson refers, applied this exception under facts analogous to those of the instant case. See Durham v. Craig, 79 Ind. 117 (1881); McDaniel v. Sprick, 297 Mo. 424, 249 S. W. 611 (1922); Rogis v. Barnatowich, 36 R. I. 227, 89 A. 838 (1914).

Price v. Martin, 46 Miss. 489, 500 (1872), recognizing the exception, stated that the rule as to conveyances by bona fide purchasers to those with notice is subject to the exception that, if the estate becomes revested in the one who had previously violated his duty, ''the original equity will re-attach to it in his hands.'' Cf. Fulton v. Woodman, 54 Miss. 158 (1876); Equitable Securities Co. v. Sheppard, 78 Miss. 217, 28 So. 842 (1900); Barksdale v. Learnard, 112 Miss. 861, 73 So. 736 (1916). Salmon v. Smith, 58 Miss. 399 (1880), does not apply to this case.

In short, if the bona fide purchaser reconveys to one with notice of claims or guilty of a prior violation of a trust or duty with respect to the land, the latter is not entitled to protection against the claimants. In the present case, we think this exception or qualification upon the right of a bona fide purchaser to transfer to others with notice is applicable. 55 Am. Jur., Vendor and Purchaser, Secs. 761, 762.

██ █ Southwest owned a construction mortgage on the property before the Southern Life deed of trust was executed. Southwest violated its responsibilities under

that instrument, since it did not use reasonable diligence to see that the advanced funds were used to pay materialmen and laborers, and no bond was given, as required by the statute. If the construction deed of trust were still in force, Southwest would be subordinate to such liens. When the Southern Life deed of trust was executed by the Olivers, over $10,000 of the loan represented by that instrument was paid to Southwest, thus amortizing its construction deed of. trust, under which Southwest had failed to perform its duties to materialmen and laborers. Subsequently, Southwest took a deed of trust, second to the Southern Life mortgage, from Mrs. Embler, foreclosed, and bought her interest. It also purchased the deed of trust from Southern Life, foreclosed, and bought that interest.

These facts bring Southwest within the terms of the established exception. In effect, the assignment of the Southern Life deed of trust to Southwest was to one who had previously been guilty of a violation of its duties with respect to the property, concerning the claims of materialmen and laborers, in disbursing the funds. Previously, the Southwest construction deed of trust was charged with the equities of lienors. Through the loan from Southern Life, Southwest's construction collateral was discharged. Subsequently it reacquired the lien on the property, and by foreclosure, the title, under both its second mortgage from Mrs. Embler, and the assignment of the first mortgage from Southern Life.

The claims of the lienors, under these facts, reattached to the land in Southwest's hands. Such a purchaser cannot be allowed to clear off the existing equities, of which it had notice, by permitting a valid mortgage and title to be transferred to an innocent purchaser, and then repurchasing the property by an assignment of that instrument. The existing equities, of which Southwest had knowledge and as to which it had violated its duties under the construction mortgage, revived and re-attach-

ed to the property, to the same extent that they formerly attached to it in Southwest's hands.

The priority of the Southern Life deed of trust was lost when it was assigned to Southwest. 8 Thompson, Sec. 4479. Accordingly, the circuit court was correct in holding that the property is subject to the prior liens of appellees.

Affirmed.

*McGehee, C. J., and Arrington, Rodgers and Jones, JJ.*, concur.