402 So.2d 822 (1981)
George SELF d/b/a George Self's Carpets
v.
Gerald NELSON and wife, Martha Nelson, and Gerald Nelson d/b/a Baker Mortgage Company and Merchants & Farmers Bank of Kosciusko, Mississippi.
No. 52776.
Supreme Court of Mississippi.
August 12, 1981.
Rehearing Denied September 9, 1981.
John Paul Moore, Starkville, for appellant.
James E. Brown, Starkville, for appellees.
Before PATTERSON, C.J., and BROOM and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellant George Self filed a petition in the Circuit Court of Lowndes County on April 9, 1979, to impress a laborers' and materialmen's lien on certain property against Gerald Nelson, Martha Nelson, and Gerald Nelson, d/b/a Baker Mortgage Company, and Merchants & Farmers Bank. The cause was transferred on petition to the Chancery Court of Lowndes County.
A short resume of the material parts of the brief record is required. Only three witnesses testified: namely, Mr. and Mrs. Self and Mr. J.D. Cook, Jr., the latter was vice-president and at the time of the trial was president of the appellee, Merchants & Farmers Bank.
Self was in the business of selling and laying carpets. In 1976 he began doing *823 such work for the Nelsons. In 1977 and part of 1978 he performed the carpet work on a residential building being constructed on Lot 27 of Cady Hills Subdivision. That job is the only account with which we are concerned in this appeal.
The Nelsons had secured a construction loan from First Columbus National Bank for $105,000, and on October 14, 1976, they secured a loan from appellee Merchants & Farmers Bank in the amount of $20,000. On July 8, 1977, Nelson secured a loan from Merchants & Farmers Bank in the principal sum of $155,000, which was labeled by Mr. Cook, the banker, as a "permanent" loan. From the proceeds of this loan, Merchants & Farmers Bank paid off the balance owed the Columbus bank. This left $30,000 to be distributed. The building for which the loan was arranged and into which went appellant Self's work and materials was barely beginning to be constructed at this time. In regard to the distribution of the alleged permanent loan, Mr. Cook testified that "there was approximately $30,000 of construction funds included in the $155,000 for current bills." (Emphasis added). It is undisputed in the record and affirmed by Mr. Cook that those funds were delivered on the date the loan was closed to Nelson without any instructions or "strings" attached. Appellant Self was owed money for work done on the building at that time and admittedly was doing business with the bank himself during the entire period of time involved, and this business was with the same Mr. Cook.
On December 15, 1977, Merchants & Farmers Bank loaned Nelson $24,000 due on June 13, 1978. On this note there appears the security of "multi-collateral." In addition, Mr. Cook testified that the collateral for both the July and December notes included the house under construction.
It is not clear from the record whether the Nelsons have moved into the house. The record leaves almost everything up in the air until the foreclosure of the July 8, 1977, note and deed of trust in the amount of $155,000 which foreclosure occurred on July 9, 1979. The bank bought the property under the foreclosure sale for exactly all monies owed it by Nelson and a short time later sold it for that amount, therefore, it lost nothing. In the meantime, appellant Self had filed a construction lien on June 6, 1978, and the present suit on April 9, 1979.
Mr. Cook testified that when the bank foreclosed on the property he and the bank had actual notice of appellant's construction lien and lis pendens notice. He testified that as far as he knew, no employee or representative of the bank ever visited the construction site of the Nelson house and the only time he went there was to attend a Christmas party after its completion. He admitted that the Self's discussed with him their concern about being paid. He testified that in December 1977 when the additional $24,000 loan was given Nelson that Mr. and Mrs. Self were in his office at the same time that the Nelsons were closing the loan in an adjacent office and he knew the loan was being closed. He stated further that he knew at that time Self was owed construction money by Nelson. Upon being questioned as to whether or not he could assist in securing Self's money, he merely told Self that "he felt like Gerald would pay him." He testified that there was no attempt or effort on the part of the bank to supervise either the distribution of the $30,000 balance "of construction funds" after the July 1977 loan or during or after the December 1977 loan of $24,000. The evidence is abundant that during the entire time the bank knew that Nelson owed Self the labor and material costs. Cook's only excuse until the December 1977 loan was that he relied on the Columbus attorney who did not find any liens actually recorded at the time the loans were made.
Mrs. Self testified that Mr. Cook, during the entire time, knew all about the debt owed her husband by Nelson, as she had been with him to the bank. She testified that Mr. Cook stated to her and Mr. Self "he did not feel the lien was necessary at this time; that Mr. Nelson was making arrangements to borrow money and that we would be paid, and he felt sure Mr. Nelson would take care of our account." On the *824 date of the December 1977 loan Mr. Cook told her and her husband, "Mr. Nelson is next door. We are making him a loan and I am sure he will take care of you out of that loan." She further testified that later Mr. Cook called her and asked if Mr. Nelson had paid them off. She advised Mr. Cook that no payment had been made. In fact, she and her husband had to borrow money from the bank, through Mr. Cook, to meet their payroll and expenses.
Mr. Self testified that in his contacts with Mr. Cook, "I was promised that I would get my money." He further testified that he did not file the construction lien until the date it was finally filed because Mr. Cook had told him that there would be enough money for the bank and them too, and that he would have nothing to worry about. This statement according to Self was made to him by Cook prior to the July 8, 1977, loan closing by the bank and Nelson and the distribution of the $30,000 excess. When asked, "Did Mr. Cook ever at any time, guarantee you or promise you that he would see that you got your money from Mr. Nelson?" Self stated, "He said he would get our money, yes, sir."
Regarding the defendants Gerald Nelson and wife, Martha Nelson and Gerald Nelson, d/b/a Baker Mortgage Company, it appears they decided they had done enough damage and had left the state, possibly to continue their operations elsewhere. A decree pro confesso was taken against these defendants which obviously is worthless.
It is our opinion that the decree of the chancellor was manifestly wrong. There is no need to cite the many cases on this point of law. We have heretofore seen that both the construction lien and the suit to establish a lien and resulting lis pendens notice was long before foreclosure by appellee bank. In clarifying the statutes on laborers' and materialmen's liens, we said in Guaranty Mortgage Co. v. Seitz, 367 So.2d 438 (Miss. 1979).
The laborers and materialmen filed their claims in the chancery clerk's office more than six months before the trustee's sale was advertised. Further, the materialmen and laborers filed a petition in the circuit court to enforce their liens one day before the sale and filed notice of the suit on the lis pendens record. It therefore follows that when Guaranty Mortgage foreclosed the deed of trust, purchased the property at the trustee's sale, it took title pendente lite subject to the contingency that the laborers' and materialmen's liens were valid.
If a mortgagee who advances money on a construction project could foreclose his deed of trust after laborers' and materialmen's liens are duly filed, and after suit is filed to enforce the liens, without the title conveyed at the sale being contingent upon the validity of the liens claimed, the rights of laborers and materialmen to their liens would be thereby destroyed.
The above holding was also set out by this Court in Smith v. Vaile Co. v. Burns, 72 Miss. 966, 18 So. 483 (1895).
We further find that under the evidence of this record, the chancellor was manifestly wrong in failing to hold that Merchants & Farmers Bank did not use reasonable diligence in disbursing the proceeds of the loans to Nelson on July 8, 1977, and December 14, 1977. Although the bank contends that the funds involved in these loans were not construction funds, the overwhelming proof shows otherwise. The proof is practically undisputed that the officer of the bank, with whom appellant dealt, easily could have followed the mandates laid down by this Court in prior cases regarding the lender's requirement to use reasonable diligence in disbursing the funds. See Deposit Guaranty National Bank v. E.Q. Smith Plumbing Co., 392 So.2d 208 (Miss. 1980); North American Mortgage Investors v. Miss. Hardware Co., Inc., 360 So.2d 1203 (Miss. 1978); Wortman & Mann, Inc. v. Frierson Bldg. & Supply Co., 184 So.2d 857 (Miss. 1966); Southern Life Ins. Co. v. Pollard Appliance Co., 247 Miss. 211, 150 So.2d 416 (1963); Deposit Guaranty Bank & Trust Co. v. J.F. Weaver Lbr. Co., 215 Miss. 183, 60 So.2d 598 (1952); First National Bank of Greenville v. Virden, 208 Miss. 679, 45 So.2d *825 268 (1950); 80 A.L.R.2d 248 (1961); and Weiss, Dreyfous & Seiferth, Inc. v. Natchez Inv. Co., Inc. 166 Miss. 253, 140 So. 736 (1932), 80 A.L.R.2d 179, 247 (1961).
Furthermore, Section 85-7-131, Mississippi Code Annotated, (Supp. 1980), setting out priorities of liens including laborers and materialmen provides that "[s]uch lien shall take effect as to purchasers or encumbrancers for a valuable consideration without notice thereof, only from the time of commencing suit to enforce the lien... ." (Emphasis added). We heretofore have seen that suit was filed long before the foreclosure. In addition to this it is undisputed in this record that the bank had full notice of appellant's lien during the entire time.
We therefore hold that the cause should be reversed and rendered and appellant given judgment here against appellee Merchants & Farmers Bank in the sum of $13,063.97 [the amount of the laborers' and materialmen's bill] with legal interest from the date of the foreclosure of July 9, 1979.
REVERSED AND RENDERED AND JUDGMENT HERE FOR APPELLANT.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and HAWKINS, JJ., concur.